Lidwina B. Silva **PEDRO**, Plaintiff,

v.

**PACIFIC PLAN OF CALIFORNIA**,
a corporation, et al.,
Defendants.

No. C–73–1844 SW (SJ).

United States District Court,
N. D. California.

March 12, 1975.

Richard A. Elbrecht, Santa Cruz, Cal., for plaintiff.

William J. McLean, Thoits, Lehman & Hanna, Palo Alto, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPENCER WILLIAMS, District Judge.

### I. *Findings of Fact*

1. At the times material to this action the defendant, Pacific Plan of California, (hereinafter called "Pacific Plan") was a corporation and a real estate mortgage loan broker. In the ordinary course of its business as a mortgage loan broker, Pacific Plan regularly arranged and offered to arrange consumer credit.

2. On October 17, 1972, plaintiff and Pacific Plan entered into a written "Agency and Servicing Agreement" whereby plaintiff appointed Pacific Plan as her agent to arrange a loan to plaintiff from a third party, Charles A. Coutts and Gail G. Coutts (hereinafter referred to as "Coutts").

3. Thereafter, Pacific Plan arranged a loan to plaintiff made by Coutts who advanced funds to Pacific Plan to enable Pacific Plan to consummate the loan. Coutts advanced $2,000.00 to Pacific Plan, of which Pacific Plan disbursed $1,503.70 to plaintiff. In exchange therefor, plaintiff made a note, secured by a deed of trust on her residence at 4352 Davis Street, Santa Clara, California in which the defendant, Security Guaranteed Agency, Inc., was trustee and Coutts was beneficiary, and by which plaintiff became obligated to repay Coutts a total of payments of $2,332.48. The remaining $496.30 of the $2,000.00 loan proceeds was disbursed in the manner set forth in the transaction's "Settlement Sheet."

4. The disclosures made by Pacific Plan to plaintiff on October 17, 1972 included those disclosures furnished in a written document entitled "Disclosure Statement of Loan Made in Compliance with Federal Law", dated October 17, 1972.

5. In all, at least eight separate documents were shown or furnished by Pacific Plan to plaintiff on October 17, 1972: (a) an Agency and Servicing Agreement dated October 17, 1972; (b) a Broker's Loan Statement dated October 17, 1973; (c) a Disclosure Statement of Loan dated October 17, 1972; (d) a Notice of Right of Rescission dated October 17, 1973; (e) a Monthly Payment notice dated October 17, 1972; (f) a Deed of Trust and Assignment of Rents dated October 17, 1972; (g) a Promissory Note dated October 17, 1972; and (h) Borrower's Escrow Instructions dated October 17, 1972.

6. On March 2, 1973, plaintiff and Pacific Plan entered into another written "Agency and Servicing Agreement" whereby plaintiff appointed Pacific Plan as her agent to arrange a refinanc-

ing of the October 17, 1972 loan from Coutts to plaintiff.

7. Thereafter, Pacific Plan arranged a loan to plaintiff made by the defendant, Scurry-Burns and Company (hereinafter referred to as "Scurry-Burns") who advanced funds to Pacific Plan to enable Pacific Plan to consummate the loan. Scurry-Burns advanced $4,000.00 to Pacific Plan, of which Pacific Plan disbursed $1,261.22 to plaintiff. In exchange therefor, plaintiff made a note, secured by a deed of trust on her residence at 4352 Davis Street, Santa Clara, California, in which the defendant, Security Guaranteed Agency, Inc. was trustee, and the defendant, Scurry-Burns, was beneficiary, and in which plaintiff became obligated to repay Scurry-Burns a total of payments of $5,447.83. Of the $4,000.00 loan proceeds, $1,834.48 were applied in full repayment of the loan from Coutts to plaintiff. The remaining $904.30 of the $4,000.00 loan proceeds were disbursed as set forth in the transaction's "Settlement Sheet".

8. The disclosures made by Pacific Plan to plaintiff on March 2, 1973, included those disclosures furnished in a written document entitled "Disclosure Statement of Loan Made in Compliance with Federal Law", dated March 2, 1973.

9. In all, at least nine separate documents were shown or furnished by Pacific Plan to plaintiff on March 2, 1973: (a) an Agency and Servicing Agreement dated March 2, 1973; (b) a Broker's Loan Statement dated March 2, 1973; (c) a Disclosure Statement of Loan dated March 2, 1973; (d) a Notice of Right of Rescission dated March 2, 1973; (e) a Monthly Payment Notice dated March 2, 1973; (f) a Special Notice of Balance Due dated March 2, 1973; (g) a Deed of Trust and Assignment of Rents dated March 2, 1973; (h) a Promissory Note dated March 2, 1973; and (i) Borrower's Escrow Instructions dated March 2, 1973.

10. In both transactions, the defendant, Pacific Plan, had knowledge of the relevant credit terms, all of which were in the purview of its relationship with plaintiff within the meaning of 12 C.F.R. § 226.6(d).

11. In both loan transactions, the lender advanced funds to Pacific Plan to enable Pacific Plan to make such loans and Pacific Plan received a commission for such services which was paid by plaintiff.

## II. *Conclusions of Law*

1. This Court has jurisdiction of this cause under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

2. Both the transaction of October 17, 1972 and of March 2, 1973 involved extensions of credit within the meaning of 12 C.F.R. § 226.2($l$).

3. Both loans were for plaintiff's personal purposes and therefore constituted extensions of "consumer credit" within the meaning of 12 C.F.R. § 226.2(k).

4. Pacific Plan "arranged" both loans within the meaning of 12 C.F.R. § 226.2(f) and was, in each transaction, a "creditor" within the meaning of 12 C.F.R. § 226.2(m).

5. Neither party contends that the credit thus extended was "open end credit" within the meaning of 12 C.F.R. § 226.2(r), nor does the Court so find. The Court therefore concludes that the disclosures applicable to the extension of "credit other than open end" were required, both in the transaction of October 17, 1972 (under 12 C.F.R. § 226.-8(a)), and in the refinancing of March 2, 1973 (under 12 C.F.R. §§ 226.8(a) and 226.8(j)). The Court concludes that in both transactions, defendant, Pacific Plan, was required to make those disclosures required under 12 C.F.R. §§ 226.8(b) and (d) in the manner required by 12 C.F.R. §§ 226.6 and 226.8(b).

6. Neither of the "Disclosure Statement[s] of Loan Made in Compliance with Federal Law" identified the lender Coutts or Scurry-Burns as required by 12 C.F.R. § 226.6(d). Said section spe-

**320**

cifically provides that in a transaction in which there is more than one creditor, "[e]ach creditor shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer. If two or more creditors make a joint disclosure, each creditor shall be clearly identified."

■ 7. The disclosure of the identity of each creditor is required to be made "together" with all the disclosures required by Regulation Z, on the same side of a single page or statement. 12 C.F.R. § 226.8(a); Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255, 1259–60 (N.D.Ga.1973), reversed on other grounds, 499 F.2d 971 (5th Cir. 1974); Thomas v. Myers-Dickson Furn. Co., 479 F.2d 740, 745 (5th Cir. 1973); Garza v. Chicago Health Clubs, 347 F.Supp. 955, 961 (N.D.Ill.1972).

■ 8. The names of the lenders, Coutts, appear in the promissory note dated October 17, 1972 and in the deed of trust dated October 17, 1972; and the name of the lender, Scurry-Burns, appears in the note dated March 2, 1973 and in the deed of trust dated March 2, 1973. However, 12 C.F.R. § 226.8(a) clearly provides that disclosures may not be made on separate pieces of paper, apart from the document on which the other required disclosures are made. *Philbeck, supra.* This Court is not persuaded by defendants' contention that they may properly disclose required and important information on documents accompanying the principal disclosure statement, for it is clear that the intent of the Truth-In-Lending Act is that all disclosures be made on the same side of a single page. Hall v. Sheraton Galleries, Civil No. 19159, 4 CCH Cons. Credit Guide ¶ 98,737, at 88,336 (N.D.Ga. Mar. 21, 1974). The Court therefore concludes that disclosure of the identity of the lenders in the separate promissory notes and deeds of trust involved here fails to satisfy 12 C.F.R. §§ 226.6 (d), 226.8(a).

■ 9. Defendant, Pacific Plan, also contends that the identity of the lenders was not actually known at the time the notes and deeds of trust were signed, and that such information was therefore not "within [its] knowledge" within the meaning of 12 C.F.R. § 226.6(d). The Court notes that the notes and deeds of trust bear the same date as the truth in lending disclosure statements. If the notes and deeds of trust were properly dated, the identity of the lenders was necessarily known. If the identity was not known, then either the notes and deeds of trust were improperly dated, or they were signed by plaintiff in blank. The Court finds that the notes and deeds of trust did not contain the names of the lenders at the time they were signed by plaintiff, and that they therefore did not and could not communicate that information to plaintiff as required under 12 C.F.R. § 226.6(d).

■ 10. Defendant, Pacific Plan, also contends that it was excused from complying with 12 C.F.R. § 226.6(d) on the ground that the information was not known to said defendant at the inception of its relationship with plaintiff. The Court notes, however, that the information was later acquired by said defendant, and could have been disclosed in a new disclosure statement at the time the information was acquired. The Court takes cognizance of the fact that it is the principal function of a mortgage loan broker to bring a prospective lender and a prospective borrower together. The Court concludes that the requirement of 12 C.F.R. § 226.6(d), namely, that the broker disclose the identity of the prospective lender to the prospective borrower, is one with which the broker is required to comply.

■ 11. Regulation Z contemplates situations where the creditor is unaware of certain information at the time when disclosures must be made. 12 C.F.R. § 226.6(f) provides in pertinent part:

If at the time disclosures must be made, an amount or other item of information required to be disclosed

. . . is unknown or not available to the creditor, and the creditor has made a reasonable effort to ascertain it, the creditor may use an estimated amount or an approximation of the information, provided the estimate or approximation is clearly identified as such, is reasonable, is based on the best information available to the creditor, and is not used for the purpose of circumventing or evading the disclosure requirements of this part.

Although no amount of effort on defendant Pacific Plan's part would have led to the discovery of the lenders' names in each transaction, defendant cannot avail itself of the protection of this section. No approximation or explanation of the absence of Coutts' or Scurry-Burn's identity from the disclosure statements was even attempted. That defendant Pacific Plan's "Agency and Servicing Agreement" demonstrates that at the time plaintiff entered into these loan transactions the lenders were yet to be procured does not satisfy 12 C.F.R. § 226.6(f), for as was determined above, all required disclosures are to be made on one side of a single sheet of paper.

12. Regulation Z, at 12 C.F.R. § 226.8 (d)(3), provides that in the case of a loan which is not a credit sale—which is the case here—a creditor must disclose "the total amount of the finance charge, with description of each amount included, using the term 'finance charge.'" This requirement is read in conjunction with the requirement of 12 C.F.R. § 226.-6(a) that

> [t]he disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. . . .

■ 13. The Court finds and concludes that the language "The total of the bonuses, brokerage, or commissions contracted for or to be received by any person for negotiating, procuring or arranging or making a loan. (Prepaid finance charge) Earned in full for services rendered," which is utilized in defendant Pacific Plan's "Disclosure Statement" to describe those commission fees included in the finance charge, satisfies 12 C.F.R. § 226.8(d)(3) and § 226.6(a), in that it, as much as is practicable, clearly disclosed that $200.00 of the $532.48 finance charge in the first transaction would be paid to Pacific Plan as a commission and that $332.48 thereof would be paid as interest, or that $400.-00 of the $2,047.83 finance charge in the second transaction would be paid to Pacific Plan as a commission and that $1,-447.83 thereof would be paid as interest on the loan.

■ 14. The language, "Credit extended as part of Finance Charge," used to denote those charges exacted for the extension of credit constituted additional non-required language which was self-contradictory and confusing and in violation of 12 C.F.R. § 226.6(c). The basic framework of the Truth-in-Lending Act and Regulation Z provides for the disclosure to the consumer of three different, but related, figures: (1) "the amount of credit of which the customer will have the actual use," using the term "amount financed" (12 C.F.R. §§ 226.2(d), 226.8(d)(1)); (2) the amount which the creditor proposes to charge for the credit thus extended, using the term "finance charge" (12 C.F.R. §§ 226.2(q), 226.4); and (3) the total of the amount financed and the finance charge, comprising the total of payments (12 C.F.R. § 226.8(b)(3)).

15. Although not the paradigms of clarity (see, e. g., 12 C.F.R. § 226.8(d) (1)), the Truth-in-Lending Act and Regulation Z seem to contemplate that the concepts and terms "credit extended" and "finance charge" be utilized in a mutually exclusive fashion. In other words, the former is not a part of the latter. To use the term "credit extended" to describe what is *paid* for credit extended is not a common sense approach to the implementation of the Act. As such, de-

fendant Pacific Plan's use of the term "Credit extended as part of Finance Charge," was misleading, confusing and self-contradictory and violative of 12 C.F.R. §§ 226.6(c), 226.8(d)(3).

▉11] 16. An appraisal fee of $35.00 was initially charged to plaintiff in the second transaction. However, it was subsequently discovered that no appraisal was conducted, and as a result, the $35.00 charge was expunged from plaintiff's account. Since the disclosure forms were pre-printed with a $35.00 appraisal fee included, it is difficult to hold that defendant has succeeded in meeting the burden of proving, under 15 U.S.C. § 1640(c) (an exculpatory provision of the Truth-in-Lending Act), that it maintained "procedures reasonably adapted to avoid any such error." In any event, defendant Pacific Plan did in fact discover its mistake in assessing plaintiff an unwarranted appraisal fee, and as plaintiff concedes, standing alone this ostensible violation does not constitute a sufficient ground for cancellation. Plaintiff's Response to Defendants' Rebuttal Trial Brief, at 4, lines 16–18.

17. Under 12 C.F.R. § 226.4(a)(5), premiums for consumer credit insurance are excludable from the finance charge if: (1) the insurance coverage is not required by the creditor as a condition precedent to the extension of credit; (2) this fact is clearly and conspicuously disclosed in writing to the customer; and (3) "any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance" (12 C.F.R. § 226.-4(a)(5)), "accompanied by a statement of the type of insurance and the term thereof." (12 C.F.R. § 226.402 (interpretation)). In addition, if the cost of insurance is not otherwise required to be included in the finance charge, "the cost to be disclosed need only be the cost of premiums for the term of the initial policy . . .." 12 C.F.R. § 226.402.

▉ 18. The disclosure made by defendant Pacific Plan in its "Disclosure Statement[s] of Loan Made in Compliance with Federal Law," concerning insurance is that set forth in Item 11, viz., "Any premium for insurance, other than fire insurance (not required by creditor for approval of loan)." (Plaintiff's Ex. "A–3" and "B–3"). The disclosure of the cost of the premiums was also set forth in Item 11 of the disclosure statements. The disclosure of the type of insurance was set forth in a separate document, Pacific Plan's "Agency and Servicing Agreement." (Plaintiff's Ex. "A–1" and "B–1"). Because the term of the insurance was coextensive with the duration of the loan, disclosure of the term of insurance was not required. *Philbeck, supra,* 499 F.2d 971.

19. Whether all of the 12 C.F.R. § 226.4(a)(5) insurance disclosures must be made on the same document containing the other required disclosures under the Truth-in-Lending Act is an unsettled question. The Fifth Circuit has steadfastly maintained that the borrowing customer should not be required to look to other documents beyond the disclosure statement document to find the term of insurance (if required), its cost and its type. Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255, 1259–60 (N.D.Ga.1973), reversed on other grounds, 499 F.2d 971 (5th Cir. 1974); accord, McTerry v. Household Fin. Corp., Civil No. 18159, 4 CCH Cons.Credit Guide ¶ 98,803 (N.D.Ga. Feb. 26, 1.74). In contradistinction to the Fifth Circuit's position, special correspondences from the Federal Reserve Board indicate that although under 12 C.F.R. § 226.402 the type of insurance and the term thereof should be given on the same form on which the insurance cost disclosures are made, all these disclosures may be made on a separate document or on the regular Truth-in-Lending disclosure form. Excerpts from F.R.B. letter of October 30, 1974, No. 853, by J. C. Kluckman, Chief, TIL Section, 4 CCH Cons. Credit Guide ¶ 31,175. See also [1969–1974

Transfer Binder] CCH Cons.Credit Guide ¶¶ 30,576 and 30,586.

 Although such correspondences are a "valuable tool" in informing the public of the law's requirements, the opinions contained therein are not binding on this, or any other, court. It is therefore the opinion of this Court that the purpose of the Truth-in-Lending Act is better served when all its required disclosures are contained on one side of one sheet of paper. Whereas the burden imposed upon the creditor is slight, the benefit to the borrowing public is substantial. In the end, the informed use of credit is promoted. The Court concludes, therefore, that the disclosures pertaining to consumer credit insurance fail to satisfy the requirements of 12 C.F.R. §§ 226.4(a)(5) and 226.402 in that the "Disclosure Statement[s] of Loan Made in Compliance with Federal Law" did not include a disclosure of the type of insurance involved.

 20. The Court finds that the language in Pacific Plan's "Agency and Servicing Agreement" stating that "Borrowers hereby state that their choice of insurance agent was voluntarily made and was not a condition precedent to their obtaining the above referred to loan, and that said Borrowers understand that said insurance may be obtained from a person of Borrowers' choice," did not contradict the language in Pacific Plan's "Disclosure Statement[s] of Loan Made in Compliance with Federal Law" relating to insurance. Plaintiff's contention that the import of the former was that the prospective borrower's only choice involved a right to select the insurance *agent* but failed to make it clear that the borrower could in fact elect not to purchase the insurance at all, as provided under § 226.4(a)(5), is unpersuasive. Contrary to plaintiff's conclusion, it is more probable that it is the lawyer who would discover and thereby be confused by the nuance of ambiguity alleged here, not the lay-person. It is to be reminded that the intent of Congress was to set standards by which to achieve meaningful truth-in-lending and not to deviously set traps by which windfalls could be reaped by fanciful lawyers.

21. All of the disclosures mentioned above were within the purview of the relationship between plaintiff and Pacific Plan.

 22. The disclosure which Pacific Plan was required to make, but did not make, were, both individually and together, material.

23. Under § 130(a)(1) of the Act, 15 U.S.C. § 1640(a)(1), Pacific Plan's failure to disclose "any information" as required by the Act and Regulation Z gave rise to a liability for statutory damages of $1,000.00. A right of action for statutory damages arose in the case of each of the two transactions. Thomas v. Myers-Dickson Furn. Co., 479 F.2d 740 (5th Cir. 1973).

 24. Under § 125 of the Act, 15 U.S.C. § 1635, and 12 C.F.R. § 226.9, a failure to make any "material disclosure" as required by the Act or Regulation Z gave rise to a right to cancel the transaction until the expiration of three days after all material disclosures were made, and to be relieved of all finance and other charges in connection with the transaction. When the creditor, Pacific Plan, failed to disclose any item of the requisite information, the right to rescind was not limited by the normal three-day period but continued until all of the disclosures were made. Eby v. Reb Realty, Inc., 495 F.2d 646, 648 (9th Cir. 1974). In this case, the above-mentioned disclosures were never made.

 25. The Court therefore finds and concludes that plaintiff was entitled to both recover statutory damages and cancel both transactions. Eby v. Reb Realty, Inc., 495 F.2d 646 (9th Cir. 1974).

26. On October 17, 1973 plaintiff filed this action. The filing of the action was timely.

27. In paragraphs 18 and 19 of her complaint herein, plaintiff gave notice of her election to cancel the transactions

in question. Such notice of election to cancel was timely.

28. Defendant, Pacific Plan, responded to plaintiff's notice of election to rescind by an offer made by letter dated November 7, 1973 to cancel the transaction, but only on condition that plaintiff pay to Pacific Plan the sum of $2,936.65. The offer of Pacific Plan failed to take account of plaintiff's request for the payment of the statutory damages to which she was entitled, and also failed to give effect to the rule of 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.9(d) that a rescinding borrower "is not liable for any finance or other charge" incurred in the transaction.

29. Having refused to voluntarily honor plaintiff's election to cancel (by reconveying the deed of trust within ten days, viz., on or before November 3, 1973 or thereabouts), Pacific Plan forfeited its right to restitution under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.9(d). See Sosa v. Fite, 498 F.2d 114 (5th Cir. 1974). However, plaintiff has recognized the presence of an equitable obligation to restore the net balance of what she has received, after due credits with respect to (a) "any finance or other charge" imposed in the transactions and nullified under 15 U.S. C. § 1635(b) and 12 C.F.R. § 226.9(d), (b) the installments (totalling $1,515.19) which she has actually paid, and (c) the statutory damages to which she is entitled under 15 U.S.C. § 1640(a)(1). See Palmer v. Wilson, 502 F.2d 860 (9th Cir. 1974), vacating 359 F.Supp. 1099 (N.D.Cal.1973). Since plaintiff does not contend that Pacific Plan has practiced any fraud or unconscionable conduct, the Court concludes that plaintiff had an equitable duty to restore the net amount she received.

30. In the two transactions plaintiff received a total of $2,764.92 and has repaid a total of $1,515.19, leaving a balance of $1,249.73, against which plaintiff is entitled to offset her statutory damages of $2,000.00—$1,000.00 (the maximum) in each transaction—leaving a net balance of $750.27 owing to plaintiff. Plaintiff is therefore entitled to an affirmative recovery from defendants in the net amount of $750.27.

31. The Court therefore concludes that plaintiff is entitled to realize the rights conferred under 15 U.S.C. § 1635 (b) and 12 C.F.R. § 226.9(d), namely: (a) an adjudication that she has rightfully cancelled the two loan transactions, (b) an adjudication that the outstanding deed of trust on her home is void, (c) an order that defendants reconvey their interest under said deed of trust of record, (d) an adjudication that plaintiff is not entitled to any finance or other charges in connection with the transactions, (e) an adjudication that plaintiff is entitled to an affirmative recovery from defendants in the amount of $750.27, and (f) an adjudication that plaintiff is entitled to recover reasonable attorney's fees, litigation expenses and court costs.

32. The Court further finds and concludes that consistent with its fiduciary duties to its customers, defendant, Pacific Plan, has a duty to make any necessary or appropriate accountings with its lenders, or either of them, to give effect to this judgment.

33. The Court finds that counsel for plaintiff has devoted more than 78 hours to the maintenance of this action, and having advanced or incurred $432.48 in litigation expenses on her behalf is entitled to fees in the amount of $3,000.-00 which the Court concludes will reasonably compensate counsel for plaintiff for his services and costs.